The bill alleges that the plaintiff is the illegitimate son of Flora Priest, who afterwards intermarried with Daniel Lytch; that Angus Priest, her father, devised and bequeathed as follows: "I give and bequeath to my daughter, Sarah Priest, *Page 22 
my negro boy Tom, and to my daughter, Flora Priest, my negro boy Wilson, and to my daughter Elizabeth Priest, my negro boy Allen; and my will and desire is, that my negro woman Sylvia remain on the plantation as the common property of my son Archibald Priest and his three first-mentioned sisters, as long as any of them remain unmarried here; and should they all, at any time, marry or leave the place, then to be equally divided between them; and, in regard to the future increase of my negro woman Sylvia, my desire is that her first child be given equally to my three grand-children, Daniel Snead, Anna Snead, and Mary Snead; that her second child be given to my daughter Sarah, and all her future children belong equally to my son Archibald and his three sisters, Flora, Elizabeth and Sarah. My will and desire is, that the whole of my stock, not already mentioned, of horses, cattle, hogs and sheep, household furniture, and all the goods and chattels which I possess, shall be owned and possessed by my three first-named daughters and my son, Archibald Priest, in common, except one cow and calf, which I direct to be given to my grand-son, William Fairley; and should my son, Archibald Priest, or either of my three first-named daughters, die intestate, or without heirs of their own body, the estate of the deceased person or persons to be inherited by the surviving ones of them alone, or their legitimate heirs;" that previously to the marriage of the said Flora with the said Daniel Lytch, which occurred in the latter part of the year 1841, they entered into a marriage contract, dated in October of that year, by which they conveyed to the defendant, Archibald Priest, all the property bequeathed to the said Flora by the said Angus Priest, to wit, "one negro boy named Wilson, and feather-bed and furniture, and all the other property to which she might in future become entitled, according to the last will and testament of her father, in trust for her and her heirs, for the sole benefit and advantage of the said Flora Priest and her heirs, during her natural life, and, after her death, to descend to, and be enjoyed by, the heirs of the said Flora, in the same manner as if she had remained single and *Page 23 
unmarried;" which contract was duly proved and registered; that the said Archibald Priest accepted the trust, and undertook to discharge the same.
The bill further alleges, that Elizabeth Priest died intestate in the year 1853, whereby her interest vested in her brother Archibald, and two sisters, Flora and Sarah; that about ten days thereafter, the said Flora died intestate, possessed of the said slave Wilson and many other articles of personal property, which she held by virtue of her father's will, and of the marriage settlement, though the legal title of this property was in Archibald Priest, as trustee, and that the plaintiff administered on her estate.
The bill further alleges that Sylvia had, besides her first child, which was bequeathed to the Sneads, six others, all of which are in the possession of the defendant, Archibald, having been surrendered to him by the husband, Daniel Lytch; that he claims the same as belonging to himself and the said Sarah, in absolute right, and refuses to account, as trustee; that the plaintiff, in his character of administrator, and in his individual right, demanded his mother's interest in the said property, which was refused by the defendant.
Plaintiff, in his bill, sets forth his claim as the next of kin of his mother, to whom, he insists that, by the provisions of the said marriage contract, he is entitled to succeed. He also alleges his right, as her administrator, to the property.
Sarah Priest and the said Archibald Priest are made defendants.
The prayer of the bill is for an account and settlement of the trust.
The defendants demurred, and the Court below sustained the demurrer, from which judgment the plaintiff appealed.
The bill is not multifarious. The plaintiff claims the same fund in two rights: First, in his own right, *Page 24 
and secondly, as administrator of his mother, of whom he is the next of kin. So, it was proper to allege both titles; for if one fails, he may entitle himself to a decree under the other, and thus put and end to the litigation. It may be that Daniel Lytch will be a necessary party for the purpose of having his disclaimer set out in a manner to conclude him; but as the bill alleges a disclaimer on his part, which, at this stage of the proceeding, is admitted by the demurrer, that objection is not fatal.
In respect to the original share of the plaintiff's mother, there will be an interesting question of construction; but it is not necessary to enter upon it at the present time, for there is no doubt that the plaintiff is entitled to the share which accrued to his mother, as one of the survivors, upon the death of Elizabeth Priest, intestate and without issue.Hilliard v. Kearney, Bus. Eq. 221; Payne v. Benson, 3 Atk. Rep. 78. The demurrer being bad, as to this part, is bad as to the whole. This is a well-settled rule of Equity pleading. Adams' Eq. 335.
There is error. The demurrer is overruled, and the defendants required to answer.
PER CURIAM. Decree accordingly.